**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-02065-MDB

MAXFIELD ALTON SUSSMAN,

Plaintiff,

v.

DEPUTY JOSHUA T. MILLER, in his individual capacity;
SERGEANT URIAH CAIN SPEIGHT, in his individual capacity; and
DEPUTY JEREMY MILLER, in his individual capacity,

Defendants.

---

**MOTION TO DISMISS**

---

Defendants, **DEPUTY JOSHUA MILLER**, **SERGEANT URIAH SPEIGHT**, and **DEPUTY JEREMY MILLER**, through their attorneys, **SGR, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby submit their Motion to Dismiss Plaintiffs' Complaint, and state as follows:

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's civil practice standards, the undersigned conferred with Plaintiff regarding the relief requested in this Motion. Plaintiff opposes the Motion.

## I. INTRODUCTION

Plaintiff's 22,000-word Complaint (ECF No. 1) alleges facts that demonstrate probable cause existed to arrest and prosecute him for felony menacing. For example, he admits that he brandished a weapon at another person in order to intimidate them.

That constitutes felony menacing in Colorado. That he denies ever *pointing* the weapon at anyone and claims he was merely holding a BB gun is immaterial. Defendants move to dismiss Plaintiff's claims on this basis, as well as others described below.

## II. STANDARD OF REVIEW

*Pro se* plaintiffs must follow the same rules of procedure that govern all litigants. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). A plaintiff, however, may not rely on mere labels or conclusions, "and a formalistic formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ALLEGED FACTS

Plaintiff's claims arise out of a series of interactions with his neighbors on May 19, 2024, and his subsequent arrest by deputies with the Fremont County Sheriff's Office (FCSO). Plaintiff alleges that FCSO responded to a report of a crime to his neighbor's house, and that his neighbors told deputies that he was standing in his front door holding a rifle while they passed by his house. ECF No. 1, ¶¶ 15-17, 39(B)(i)-(ii). After taking a witness statement from his neighbors and viewing video of the incident, the deputies arrived at his house. *Id.* at ¶ 22.

Plaintiff spoke with the deputies about the incident. *Id.* at ¶ 24(C). He told the deputies: "I held out my BB gun, and she [the neighbor] started screaming, 'he's pointing an AK at me.'" ECF No. 1, ¶ 24C. Plaintiff repeatedly references the body worn camera footage from this incident. *Id.* That footage depicts the way he told the deputies he had been holding the gun:



*See also* **Def.'s Ex. A** (Deputy Josua Miller's Body Worn Camera), 00:24:50.[1] He further alleges telling deputies why he was holding up a gun – first to "defend his property", and then later to defend his life. *See* ECF No. 1, ¶ 24(C).[2]

Plaintiff attempts to explain why he held up a BB gun to intimidate a passing vehicle, by asserting that his neighbors were the aggressors. Plaintiff told deputies that his neighbors drove by his house earlier that day and revved their engine. *Id.* at ¶ 39(B). Plaintiff told deputies that his neighbors did not point a gun at him during this "first pass."

[1] The Court may consider this footage as it is referenced in the Complaint and central to the claims. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).
[2] Notably, Plaintiff's gesture with the rifle from the video above corroborates what witnesses had told the deputies. *Id.* at ¶ 39(B)(2).

*Id.*[3] Plaintiff alleges he then got into his car, followed his neighbors until they stopped their car, and "verbally asked [them] to stop driving by his residence and pointing a firearm at him." *Id.* at ¶ 39(A).[4] Plaintiff further alleges that his neighbors then pointed a gun at him after he followed them down the road. *Id.* at ¶ 39(A). Per Plaintiff, his neighbors ultimately returned for a "second pass" of his home, and the driver of the vehicle pointed a pistol at him while the driver's wife video recorded. *Id.* at ¶ 39(b).

Deputy Joshua Miller arrested Plaintiff after Plaintiff tried to explain the incident to the deputies. *Id.* at ¶¶ 32-35. Sergeant Uriah Speight aided in the arrest and "authored, approved, or ratified" a supplemental report. *Id.* at ¶ 37. Plaintiff claims that Deputy Jeremy Miller was present on scene and "failed to intervene during the muted-audio strategy-discussion." *Id.* at ¶ 42(B).

Plaintiff brings various claims against each of these three Defendants, including for false arrest, malicious prosecution, failures to intervene in his arrest, "fabrication of evidence" and violations of equal protection, pursuant to 42 U.S.C. § 1983 and C.R.S. § 13-21-131 (ELEIA). Defendants address these claims in turn.

---

[3] Given that the complaining party and Plaintiff are neighbors, the act of driving by his house and then coming back in the opposite direction (as described at ECF No. 1, ¶ 39) is entirely consistent with the neighbors leaving and then returning to their home.

[4] While Plaintiff alleges that he told his neighbors to stop pointing guns at him after he followed them down the road, he also alleges that they did not point guns at him before this. *Id.* at ¶ 39(B). The allegations are contradictory and need not be accepted. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1053 (10th Cir. 2020).

## IV. ARGUMENT

### A. State and Federal Law is Similar.

Plaintiff alleges state and federal law claims that are essentially identical. Article II, § 7 of the Colorado Constitution protects individuals from unreasonable searches and seizures. *See People v. Rister*, 803 P.2d 483, 489-90. This provision of the Colorado Constitution is substantially similar to the federal Fourth Amendment. The same is true of the constitutional provisions that Plaintiff asserts claims under. Additionally, like with federal court, any arrest in Colorado must be supported by probable cause. *See People v. King*, 16 P.3d 807, 812 (Colo. 2001). The Colorado Court of Appeals has held that case law developed under 42 U.S.C. § 1983 should be used as authority in determining ELEIA claims. *See Woodall v. Godfrey*, 553 F.3d 249, 256-57 (Colo. App. 2024); *Brooks v. City & Cnty. of Denver*, 593 P.3d 937, 951 (Colo. App. 2026). Here, Plaintiff's federal and state claims are identical. The Court should analyze them using the same standard in finding that probable cause existed to arrest Plaintiff.

### B. Defendants possessed probable cause.

Plaintiff asserts he was wrongfully arrested and that the charges against him were false. However, taking the factual allegations in the Complaint as true, there was probable cause for felony menacing. This is dispositive of all claims.

Probable cause exists if "the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Adams v. Williams*, 407 U.S. 143, 148 (1972); *Keylon v. City of Albuquerque*,

535 F.3d 1210, 1216 (10th Cir. 2008) (recognizing same). "Probable cause doesn't require proof that something is more likely true than false. It requires only a 'fair probability,' a standard understood to mean something more than a 'bare suspicion' but less than a preponderance of the evidence at hand." *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014). "When assessing whether an officer had probable cause to arrest an individual, courts 'examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

Plaintiff alleges that he was charged with felony menacing. ECF No. 1, ¶ 106. Felony menacing in Colorado is codified at C.R.S. § 18-3-206:

> A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 1 misdemeanor, but it is a class 5 felony if committed by the use of a firearm, knife, or bludgeon or a simulated firearm, knife, or bludgeon.

Felony menacing is not a specific intent crime. *See People v. Crump*, 769 P.2d 496, 498-99 (Colo. 1989). Because Plaintiff's alleged justification for brandishing a simulated firearm does not negate the intent or act as defined by the statute (i.e., to place a person in fear of serious bodily injury), his claim for self-defense is an affirmative defense. *See Galvan v. People*, 476 P.3d 746, 753 (Colo. 2020). But an affirmative defense does not negate probable cause. *See Devloo v. Archuleta County*, No. 26-cv-00208-NYW-CYC, 2026 WL 2194742 at *4 (D.Colo. July 30, 2026) (reviewing the state of the law).

*1. The Complaint Alleges Facts Demonstrating Probable Cause.*

Here, Deputies were told by a complaining party that "'I don't know if he was pointing [the gun] at me, but it was very clear he was brandishing it in the air" and "I don't know if he pointed it at me, but it's very apparent that it's a fucking AR." ECF No. 5, 39(B)(ii). The complaining parties also told the deputies that Plaintiff had "tried [to run them over with his car]' or threatened them[.]" *Id.* at ¶ 39(A). Plaintiff also told and admitted to the deputies: "I'm allowed to hold up any actual weapon on my own property to defend my property … I'm defending my life." *Id.* at ¶ 24(C). Plaintiff admits he held his BB gun out at his neighbors and that they started "screaming" as a result. *Id.*

That conduct, considered together and gleaned purely from the facts alleged in the Complaint, constitutes probable cause for felony menacing. Plaintiff admits to brandishing a weapon to ward someone away from his property using the threat of physical force by a simulated weapon. He alleges and admits that his actions did in fact cause distress as his victims screamed contemporaneously. He further admits that the officers were aware of these facts based on what the neighbors had told them.

While Plaintiff alleges that he did not "aim, sight, or draw down the BB gun in the direction of the complainants," this is irrelevant and does not defeat probable cause. *See People v. Shawn*, 107 P.3d 1033, 1036 (Colo. App. 2004) ("The term 'use' in § 18–3–206 is broad enough to include the act of holding the weapon in the presence of another in a manner that causes the other person to fear for his safety.") (quoting *People v. Hines*, 780 P.2d 556, 559 (Colo. 1989)). Again, Plaintiff admitted to deputies that he had held the weapon in the presence of neighbors before they started screaming. ECF No. 1, ¶

24(C). From the information alleged in the Complaint that the deputies knew, Plaintiff's gesture with the simulated weapon falls squarely into felony menacing.

*2. The Body Worn Camera Footage.*

As explained above, the Court may consider the referenced body worn camera footage depicting the entirety of the arrest and conversation with Plaintiff. *See Jacobsen*, 287 F.3d at 941. Broadly, this footage reflects Plaintiff's allegations.[5]

Plaintiff asserts that the deputies engaged in a nefarious scheme, as evidenced by a lull in the audio recording of body worn camera footage. *See, e.g.* ECF No. 1, ¶ 25(D)(i)(-(iii). But state law allows an officer to mute his camera for tactical discussions when a member of the public is not present. COLO.REV.STAT. § 24-31-902(1)(a)(II)(B). These allegations constitute the only personal participation claimed against Deputy Jeremy Miller. Because that conduct was lawful, Plaintiff has failed to allege Deputy Jeremy Miller's personal participation in a constitutional violation and the claims against him should be dismissed. *See Beedle v. Wilson,* 422 F.3d 1059, 1072 (10th Cir. 2005) ("Liability under § 1983 requires personal participation in the unlawful acts."); *Shash v. City of Pueblo*, 770 F.Supp.3d 1279, 1293-94 (D.Colo. March 14, 2025) (same requirement for ELEIA claims).

[5] Notably, the body worn camera footage does *not* depict Deputy Miller refusing to view Plaintiff's supposed video of the incident. *See* **Def.'s Ex. A**.

*3. Plaintiff's "Self Defense" Argument Does Not Obviate Probable Cause.*

Throughout the Complaint, Plaintiff avers that he brandished a BB gun at his neighbors in self-defense. He appears to assert that this means probable cause for his arrest was obviated as a result. He is incorrect.

Even if Plaintiff acted in self-defense, there is no authority demonstrating that it obviates *probable cause* in this circuit. *See Devloo*, No. 26-cv-00208-NYW-CYC, 2026 WL 2194742 at *4 (D.Colo. July 30, 2026) (reviewing the state of the law in this circuit regarding the same). He may of course raise that argument in his criminal case, which could negate his culpability for otherwise violating C.R.S. § 18-3-206. But the existence of a possible affirmative defense does not obviate probable cause in this circuit. Moreover, "officers need not rule out a suspect's innocent explanation for suspicious facts." *Craft v. White* 840 F.App'x 372, 378 (10th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 67-68 (2018)); *see also Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006) ("[A] suspect's contradiction of a witness' accusation is not sufficient to vitiate probable cause; otherwise it would be virtually impossible to secure a warrant for anyone but a confessed offender."). And "probable cause exist[s] even if some of the evidence had suggested self-defense." *Craft,* 840 F.App'x at 378.

Plaintiff's allegations of self-defense mirror the evidence that was rejected in *Craft* – his own explanations for his conduct. Specifically, the Complaint alleges that the deputies were aware that Plaintiff had called 911 to report that his neighbor "was driving around in a golf cart waving a gun." ECF No. 1, ¶ 21. Plaintiff then alleges that he

described the act "on scene" as pointing a firearm. *Id.* But the deputies were free to disbelieve Plaintiff for the following reasons alleged in the Complaint:

- Plaintiff's description of the conduct precipitating his alleged "self-defense" shifted between "waving" and "pointing" a gun. *Id.* at ¶ 21.
- Plaintiff's asserted reason for brandishing a weapon was inconsistent between protecting his property (an invalid reason) and protecting his life. *Id.* at ¶ 24(C).
- Plaintiff's neighbors told deputies that he had threatened them and attempted to run them over with his car. *Id.* at ¶ 39(A) – which an officer could reasonably conclude shows that Plaintiff initiated the contact or was not credible.
- Plaintiff's admits that the video from his neighbors that the deputies reviewed did not depict them brandishing a firearm. *Id.* at ¶ 39(D).

Accordingly, even presuming that Plaintiff's neighbors pointed a gun at him, and that he had video showing this, probable cause for felony menacing would still have existed given the totality of the information known to the deputies, both as alleged and as shown in **Def's Ex. A**.

*3. The Effect of Probable Cause on Plaintiff's Claims.*

As demonstrated above, probable cause existed for the single charge asserted against Plaintiff. Accordingly, his false arrest claims should be dismissed. *See Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) ("A warrantless arrest is permissible when an officer has probable cause to believe that a person committed a crime.") The same is true of his malicious prosecution claim. *See Nieves v. Bartlett*, 587 U.S. 391, 406-07 (2019). Accordingly, those claims (claims 1, 2, and 4) should be dismissed because

probable cause existed. Claims 3 and 5 are derivative of the above – they assert that other Deputies did not intervene in Plaintiff's arrest. Because that arrest was constitutional, no duty to intervene arose. *See Rowell v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma*, 978 F.3d 1165, 1175 (10th Cir. 2020).

As to his speech claim (claim 6), Plaintiff identifies the narrow *Nieves* exception to the probable cause requirement. *See* ECF No. 1, ¶¶ 107-108. But Plaintiff misunderstands this exception*.* There, the Supreme Court held:

> Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech.

*Nieves*, 587 U.S. at 406. The Supreme Court then examined the expansion of warrantless arrests to include misdemeanors and made an analogy concerning jaywalking. *Id.* at 407.Plaintiff asserts that his arrest and prosecution for felony menacing falls within this exception for two reasons: (1) because he previously threatened to sue the police for "stalking" him, and (2) his neighbors were not similarly arrested or prosecuted.

The Supreme Court's "narrow" exception in *Nieves* does not apply to felony menacing as it is not a crime that an officer ordinarily has discretion not to charge. *See Pallas v. Accornero*, No. 19-cv-01171-LB, 2019 WL 3975137 at *5 (N.D. Cal. August 22, 2019); *Thomas v. Cassia County*, 491 F.Supp.3d 805, 813 (D. Idaho, September 25, 2020). This Court should hold the same and dismiss Plaintiff's free speech claim(s) because probable cause for felony menacing existed.

### C. No Fabricated Evidence.

Plaintiff quotes from Sgt. Speight's supplemental report and asserts that Sgt. Speight "author[ed]" a "supplemental narrative falsely stating that Plaintiff had no proof[.]" *See* ECF No. 1, ¶¶ 42(B), 69. Plaintiff appears to take issue with this statement in light of the video that he alleges he has of his neighbors driving by his house. This supplemental report is attached for the Court's review because it is referenced in the complaint and central to Plaintiff's claims. *See* **Def.'s Ex. B.** The Complaint is misleading as to what Sgt. Speight's report contains. The relevant portion of Sgt. Speight's report is as follows:

> Max then went on to state he is allowed to hold up a weapon to defend his property. Max also said he is defending his house because they (the neighbors) were pointing pistols at him. Max was asked if he had any proof of this and he did not. Max was advised of the video from the neighbor.
>
> **Max advised he has already emailed his evidence to Sheriff Cooper, Linda Stanley, and the US Department of Justice.**
>
> Max said he felt in fear of his life because the neighbors were driving nearby and pointing guns at his house over the last few days.
>
> Max then said we (as law enforcement) were committing felony witness intimidation, and we were violating his civil rights.
>
> It was brought to Max's attention that another person who was in the area looking at property to buy, has made a similar accusation about a person in a black Chrysler (the same vehicle parked in Max's driveway) threatening them while holding a gun, but the person did not pursue criminal charges[.]

**Def.'s Ex. B**, p. 3 (emphasis added). Yet Plaintiff alleges Sgt. Speight never said any of the above in his supplemental report. *See* ECF No. 1, ¶ 37. Plaintiff asserts that if the "false" statements were removed and his reference to the video were added, "probable cause would not have existed." ECF No. 1, ¶ 70. This appears to be the main premise of

a "*Franks*" based malicious prosecution claim against Sgt. Speight. *See Kapinski v. City of Albuquerque*, 964 F.3d 900, 906 (10th Cir. 2020).

Plaintiff has improperly applied *Franks* to these circumstances. Sgt. Speight's supplemental police report is not an application for a warrant. *See* **Def.'s Ex. B.** A Court in this District ruled on a similar argument in *Murphy v. Gardner*, 413 F.Supp.2d 1156, 1165 (D. Colo. Feb. 1, 2006) (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 744 (1st Cir. 1980)). Moreover, the statements he alleges should have been in Sgt. Speight's report were in fact present. *See* **Def.'s Ex. B**. Accordingly, any claim against Sgt. Speight arising from this his report should be dismissed.

**D. Equal Protection.**

Plaintiff refers to an equal protection "class of one" claim in his Complaint. *See* ECF No. 1, ¶ 108(B). But any claim predicated on this theory fails because Plaintiff, per the allegations, is not similarly situated in all ways to his neighbors. This is a heavy burden for Plaintiff to meet. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1218 (10th Cir. 2010). Most notably, the largest difference between him and his neighbors is that Plaintiff *admitted* to brandishing a simulated weapon in order to scare his neighbors (the elements of the charged crime). A rational person could therefore "regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." *Id.*

To the extent that Plaintiff alleges a claim under the Fourteenth Amendment or Article II, § 25 outside of this claim, Plaintiff has failed to allege "conscience shocking" behavior that is required for his claims to be plausibly alleged. *See Doe v. Woodard*, 912

F.3d 1278, 1300 (10th Cir. 2019); *Green v. Post*, 574 F.3d 1294, 1303-04 (10th Cir. 2009) (addressing whether allegations meet this threshold as a matter of law).

**E. Qualified Immunity.**

Plaintiff brings § 1983 claims against all three deputies. Accordingly, they assert qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). When a defendant raises the qualified-immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Cummings v. Dean*, 919 F.3d 1227, 1239 (10th Cir. 2019). "To survive a motion to dismiss premised on qualified immunity, the plaintiff must allege sufficient facts that show – when taken as true – the defendant plausibly violated his constitutional rights, which were clearly established at the time of the violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

As explained above, Plaintiff has failed to allege a plausible constitutional violation as to any of his claims. Nor can Plaintiff meet his burden of demonstrating that any such constitutional violation was clearly established at the time of the incident, or that Defendants lacked *arguable* probable cause. *Holmes*, 830 F.3d at 1140. Because Defendants could have reasonably believed there was a "fair probability" that Plaintiff had committed menacing, they are still entitled to qualified immunity even in the absence of actual probable cause. *See Sabeerin v. Albuquerque Police Dep't*, No. 21-2046, 2022

WL 1013809, at *4 (10th Cir. Apr. 5, 2022) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.") (cleaned up).

### F. The Complaint Violates Rule 8.

Even if the Court disagrees with the above, the Complaint is not " a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). It is eighty pages long and uses nearly 22,000 words to describe a short series of events between him, his neighbors, and law enforcement. The Complaint constantly cross-references pages of allegations from other paragraphs, creating a morass that would be almost impossible to respond to in an answer. Such a prolix complaint should be dismissed. *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).

**WHEREFORE**, for the reasons stated herein, Defendants respectfully request that the Court enter an Order dismissing Plaintiff's Complaint with prejudice and grant all other and further relief as the Court deems appropriate.

Respectfully submitted this 16th day of September, 2026.

s/ Jonathan N. Eddy
***Jonathan N. Eddy***
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
Email: jeddy@sgrllc.com

s/ James T. Kadolph
***James T. Kadolph***
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
Email: jkadolph@sgrllc.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of September, 2026, I electronically filed a true and correct copy of the above and foregoing **MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses. A copy was emailed to the following *pro se* party:

Maxfield Alton Sussman
Email: maxs1983184@gmail.com
*Plaintiff Pro Se*

*/s/ Mariel Juniper*
Legal Secretary