IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-02065-MDB

---

MAXFIELD ALTON SUSSMAN,

Plaintiff,

v.

DEPUTY JOSHUA T. MILLER, in his individual capacity;
SERGEANT URIAH CAIN SPEIGHT, in his individual capacity; and
DEPUTY JEREMY MILLER, in his individual capacity,

Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS (ECF NO. 28)**

Plaintiff Maxfield Alton Sussman respectfully submits this response in opposition to Defendants' Motion to Dismiss, ECF No. 28 (the "Motion"). Citations to "Compl. ¶" are to the Complaint, ECF No. 1.

1. The Motion rests on one proposition: that the Complaint itself establishes probable cause to arrest Plaintiff for felony menacing, which Defendants call "dispositive of all claims." Mot. at 5. It does not. The Motion reaches that conclusion by reading the pleading against Plaintiff. It turns Plaintiff's on-scene statement that he "held out my BB gun" into an admission that he held it "out at his neighbors," Mot. at 7, and it relies on a complainant's account that he was "brandishing it in the air" while treating as "irrelevant" whether he aimed it at the complainants, *id.* — though the same complainant twice said she did not know whether Plaintiff pointed anything at her. It also sets aside what the Complaint pleads the officers knew: that her own video showed Plaintiff inside his home holding what the arresting deputy could describe only as a "dark object"; that Plaintiff had reported to dispatch, before officers arrived, that the

complainants pointed a pistol at him; and that Plaintiff offered his own video, which the officers did not view.

2. Taken as true, those facts do not establish probable cause, and the Motion's remaining grounds depend largely on the contrary premise. The Motion should be denied, and any dismissal the Court finds warranted should be without prejudice.

**I. THE STANDARD ON THIS MOTION**

3. Well-pleaded facts are accepted as true, and the question is whether they allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Tal v. Hogan*, 453 F.3d 1244, 1266 (10th Cir. 2006). Qualified immunity does not change that standard; the court "uses the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally." *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1301 (10th Cir. 2025) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007)).

4. The Court may consider a document the complaint refers to if it is central to the claims and indisputably authentic. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). The Complaint relies on Deputy Joshua T. Miller's body-worn-camera recording, and Plaintiff does not object to the Court reviewing Exhibit A. But considering a recording is not weighing it against the pleading. Even applying the Sixth Circuit's rule, which the officers asked it to adopt, the Tenth Circuit declined to rely on the officers' videos because they did not "blatantly contradict or utterly discredit" the complaint. *Fuqua*, 157 F.4th at 1299–1300. Defendants claim no contradiction. They describe the footage as "depicting the entirety of the arrest and conversation with Plaintiff," and state that "[b]roadly, this footage reflects Plaintiff's allegations." Mot. at 8. On the same page they acknowledge "a lull in the audio recording," *id.* — the interval of approximately eight and one-half minutes in which, the Complaint alleges, the

camera's audio was muted while the officers decided how to proceed. Compl. ¶ 25D. A recording cannot contradict allegations about what it did not record. *Cf. Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010).

5. Exhibit B, Sergeant Speight's report, may be considered, if at all, only for what it says, not for whether what it says is true. Even documents a court may judicially notice "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Dayton v. City & Cnty. of Denver*, 649 F. Supp. 3d 1124, 1133 (D. Colo. 2023) (quoting *Tal*, 453 F.3d at 1264 n.24). A court that considers documents outside the pleadings without a valid exception "must convert the motion to dismiss into a motion for summary judgment." *Cuervo*, 112 F.4th at 1312; *see* Fed. R. Civ. P. 12(d).

## II. THE COMPLAINT DOES NOT ESTABLISH PROBABLE CAUSE

### A. The standard and the element.

6. Defendants agree that probable cause turns on "the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information." Mot. at 5 (quoting *Adams v. Williams*, 407 U.S. 143, 148 (1972)). And "police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998). Where an accusation rests on "observations of conduct captured and preserved on an available videotape," relying on the accusers' account rather than the recording "would allow a wholesale delegation of police officers' duty to investigate and make an independent probable cause determination." *Id.* Officers are therefore "charged with knowledge of any 'readily available exculpatory evidence' that they unreasonably fail to ascertain." *Maresca v. Bernalillo County*, 804 F.3d 1301, 1310 (10th Cir. 2015) (quoting *Baptiste*, 147 F.3d at 1259).

7. Defendants quote the menacing statute as requiring that a person "knowingly places or attempts to place another person in fear of imminent serious bodily injury," with the felony grade turning on "the use of a firearm, knife, or bludgeon or a simulated firearm, knife, or bludgeon." Mot. at 6 (quoting C.R.S. § 18-3-206). Their authority says that "use" is "broad enough to include the act of holding the weapon in the presence of another in a manner that causes the other person to fear for his safety." Mot. at 7 (quoting *People v. Shawn*, 107 P.3d 1033, 1036 (Colo. App. 2004)). Where the conduct is holding, the manner of holding is the element.

**B. What the Complaint pleads.**

8. Taken as true, the Complaint pleads the following. Plaintiff was target-shooting with a BB gun on his own property that day. Compl. ¶ 24A. To the extent he held it during the complainants' pass-by, it "was held out to Plaintiff's side and generally downward, pointed away from the public roadway and away from the complainants"; he "did not aim, sight, or 'draw down' the BB gun in the direction of the complainants or the roadway," and did not fire it. *Id.* ¶ 24B. When the complainant narrated "now he's pointing an AR at us," her own video shows Plaintiff "inside his residence through a partially open door," and it does not depict his hands "in any usable detail." *Id.* ¶ 39C. Deputy Miller's probable-cause statement described the object only as a "dark object in his hand," *id.*, and acknowledged that he "did not see any pistols being pointed at Mr. Sussman in the video." *Id.* ¶ 60. The complainant twice stated — in her 911 call and in her interview with Deputy Miller — that she did not know whether Plaintiff was pointing the firearm at her. *Id.* ¶ 41A(vii); *see* Mot. at 7. The pat-down found no weapon. Compl. ¶ 24. And before officers arrived, Plaintiff had reported to dispatch that the complainants "pointed an actual pistol at him when he was in his car," *id.* ¶ 39A; on scene he described Shaun Boughton pointing a handgun at him during the pass-by and tried to offer his own video of it, which the officers did not view. *Id.* ¶¶ 25F, 28–29, 37.

9. The Motion reads these allegations the other way. It says that Plaintiff "admits he held his BB gun out at his neighbors and that they started 'screaming' as a result." Mot. at 7. The statement the Complaint quotes is: "I held out my BB gun, and she started screaming, 'he's pointing an AK at me'. I don't own an AK sir. I don't own any actual firearms." Compl. ¶ 24C. The words "at his neighbors" are the Motion's. The Complaint pleads how the BB gun was held — to the side, downward, away from the complainants, unaimed — and that Plaintiff's on-scene statements were a stress-impaired attempt, during the police encounter, to describe what had happened earlier, not an admission of the conduct charged. *Id.* ¶¶ 24B, 24C. At this stage the pleaded manner controls, and under the Motion's own authority the manner is the element.

10. Nor do the complainant's statements supply probable cause on these facts. She accused Plaintiff of pointing an "AR"; her own recording shows him inside his home holding an object the investigating deputy could describe only as "dark"; she twice said she did not know whether he pointed anything at her; and Boughton, who was driving her vehicle, is alleged to have pointed a real handgun at Plaintiff during the same pass. Compl. ¶¶ 24A, 39B, 39C, 41A(vii). *Grubbs*, on which Defendants rely, addresses "a suspect's contradiction of a witness' accusation." Mot. at 9 (quoting *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006)). Here the accusation was qualified by the accuser herself and is not borne out by her own recording.

**C. The officers declined to examine the evidence available to them.**

11. The accusation rested on a video in the complainants' possession. When Plaintiff asked to see it, Deputy Miller answered, "I'm not going to show you the video. It's on their phone right now." Compl. ¶ 37. Plaintiff had his own video of the same pass and tried to offer it; the officers gave him no opportunity to display it. *Id.* ¶¶ 28–29. The officers' discussion of "whether to review Plaintiff's offered evidence, what to include in the probable-cause statement, and how to proceed" took place during the muted interval. *Id.* ¶ 25D. And before speaking with Plaintiff, Deputy Miller told the complainants that their account was "legitimate" and that "it fits the same

mode of operations for him," *id.* ¶ 41C, and that he was "doubting [Plaintiff is] going to answer the door for us … which might entail writing a warrant for him." *Id.* ¶ 32. Those allegations describe the "wholesale delegation" that *Baptiste* holds an officer may not make. 147 F.3d at 1259. Defendants' own authority draws the line here. *Craft v. White*, which the Motion cites, Mot. at 9, distinguished *Baptiste* because it involved "a warrantless arrest at the scene of an alleged crime" and "the arresting officer had the video and watched it before arresting the shopper," whereas the officer in *Craft* "was not at the scene and did not have the video." 840 F. App'x 372, 376 (10th Cir. 2021) (unpublished). Here the arrest was warrantless and made at Plaintiff's residence, where the pass-by occurred; Deputy Miller reviewed the complainants' video before the officers contacted Plaintiff; and Plaintiff tried to offer his own video to the officers on scene. Compl. ¶¶ 26–29, 32, 36, 39C, 60A.

12. The Complaint also pleads that the probable-cause statement included inflammatory matter unrelated to any element, omitted these exculpatory facts, which Defendants knew or recklessly disregarded, and, corrected, would not have established probable cause. Compl. ¶¶ 39I, 41, 41A, 41B. That is the test this Circuit applies to knowing or reckless omissions. *Stewart v. Donges*, 915 F.2d 572, 582–83 & n.13 (10th Cir. 1990); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). The Motion addresses the corrected-affidavit allegations only as to Sergeant Speight's report, Mot. at 12–13, not as to Deputy Miller's probable-cause statement, which is where they are directed.

**D. Self-defense is not the Complaint's theory.**

13. The Motion argues that "an affirmative defense does not negate probable cause." Mot. at 6; *see id.* at 9–10. Plaintiff does not contend otherwise, and the Complaint does not rest on one. Its theory is that the facts known to the officers did not show the elements of menacing at all. Compl. ¶¶ 24B, 39C, 41A, 41B, 60. The words Defendants quote — "I'm allowed to hold up any actual weapon on my own property to defend my property … I'm defending my life" — are

pleaded as Plaintiff's statement of his rights during the encounter, not as the conduct charged. *Id.* ¶ 24C. And "it is not a crime in the State of Colorado to hold a gun on your property, or to protect your home from intruders." *Hanson v. Larimer Cnty. Bd. of Cnty. Comm'rs*, No. 1:20-cv-00317-RBJ, 2021 WL 2550162, at *5 (D. Colo. June 22, 2021) (holding no probable cause for felony menacing), *appeal dismissed*, No. 21-1243, 2021 WL 6206654 (10th Cir. Oct. 12, 2021). The principle that officers need not rule out an innocent explanation, Mot. at 9, assumes reasonably trustworthy information of facts amounting to the offense. The Complaint pleads that the officers did not have it, and declined to look at what would have supplied the answer.

14. The Motion's list of reasons the officers "were free to disbelieve Plaintiff," Mot. at 10, is a list of credibility findings against him, and the Complaint answers each. "[W]aving" to dispatch and "pointing" on scene describe the same conduct. Compl. ¶ 21. The property-and-life wording is the encounter statement ¶ 24C addresses. The complainants' claim that he tried to run them over is pleaded as false: Plaintiff did not leave his vehicle or display any object, and Boughton drew a handgun on him. *Id.* ¶ 39A. And the complainants' video does not show Boughton's hand because it was pointed away from him, *id.* ¶ 39D, so its silence is not evidence that there was no gun. The Motion's footnote calling these allegations contradictory, Mot. at 4 n.4, does not change that; the Motion itself argues probable cause "even presuming that Plaintiff's neighbors pointed a gun at him." *Id.* at 10. These are disputes of material fact. A court may determine probable cause as a matter of law "when there is no dispute over the material facts," *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014); that condition is not met here.

## III. THE MOTION'S REMAINING GROUNDS

### A. The First, Second, and Fourth Claims.

15. The Motion argues these claims on probable cause. Mot. at 10–11. That argument fails for the reasons given. Its argument about Sergeant Speight's report, *id.* at 12–13, is addressed in

Part III.D. The Second Claim is also pleaded as judicial deception, and the knowing or reckless omission from an arrest affidavit of information that would have vitiated probable cause has been clearly established in this Circuit since *Stewart*. 915 F.2d at 582–83; *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). The Fourth Claim arises under C.R.S. § 13-21-131, which provides that "[q]ualified immunity is not a defense to liability pursuant to this section," § 13-21-131(2)(b), and the Complaint pleads the intentional-or-reckless standard Colorado's courts apply to tainted affidavits. Compl. ¶¶ 88–89; *Johnson v. Staab*, 2025 COA 45, ¶¶ 31–32, 34, 571 P.3d 939. The Motion's point that state and federal law are similar, Mot. at 5, does not reach the statute's immunity provision.

**B. The Third and Fifth Claims, and Deputy Jeremy Miller.**

16. The Motion treats the failure-to-intervene claims as "derivative" of a lawful arrest. Mot. at 11. If probable cause is not established, that premise fails. In November 2022 the Tenth Circuit held, in a published opinion, that "a failure-to-intervene claim is not limited to excessive force violations, but can involve other underlying constitutional violations," including fabrication of evidence and arrest without probable cause. *Bledsoe v. Carreno*, 53 F.4th 589, 617 (10th Cir. 2022). It granted qualified immunity on that theory only because the claim was not clearly established in 1999, when the conduct there occurred. *Id.* The arrest here was in May 2024.

17. As to Deputy Jeremy Miller, the Motion argues that the muted interval was lawful under C.R.S. § 24-31-902(1)(a)(II)(B) and is his only alleged participation. Mot. at 8. Failure-to-intervene liability turns on presence and "a realistic opportunity to intervene to prevent the harm from occurring." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). The Complaint pleads both: Jeremy Miller took part in the officers' post-interview discussion and continued conferring with Deputy Miller and Sergeant Speight through the muted interval until they left for Plaintiff's home. Compl. ¶¶ 22, 25D, 80. Whether the audio was lawfully muted does not bear on whether he was

present and able to intervene in an arrest made without probable cause. The statute is also conditional; it permits a camera to be turned off "in administrative, tactical, and management discussions when civilians are not present." § 24-31-902(1)(a)(II)(B). The Complaint pleads a deliberation about whether to review exculpatory evidence and what to put in a probable-cause statement, Compl. ¶ 25D; whether that was a "tactical" discussion, and whether civilians were present, are facts the Motion asserts and the pleading does not supply. And the Motion's footnote that the footage "does not depict Deputy Miller refusing to view Plaintiff's supposed video," Mot. at 8 n.5, asks the Court to weigh the recording against Compl. ¶¶ 28–29 and 37, which *Tal* does not permit.

**C. The Sixth Claim.**

18. A retaliatory-arrest plaintiff "must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). The Complaint does. Compl. ¶ 107. The exception is pleaded only in the alternative. *Id.* ¶¶ 108–108A. The Motion argues that the exception cannot apply to felony menacing because officers do not ordinarily have discretion not to charge it, citing two out-of-circuit district-court decisions. Mot. at 11. The Supreme Court framed the exception by the evidence, not the offense: the requirement "should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." 587 U.S. at 407. And "[t]he only express limit we placed on the sort of evidence a plaintiff may present for that purpose is that it must be objective." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (per curiam). The Complaint pleads that evidence for the very offense charged. In the same incident the officers were told that Boughton had pointed a real handgun at Plaintiff — conduct that would itself be felony menacing — and they did not interview, detain, arrest, or refer him. Compl. ¶¶ 25F, 39A, 39B, 108A. Whatever discretion felony menacing allows in general, these officers exercised it for one participant and against the other.

**D. The Seventh and Ninth Claims, and the Speight report.**

19. The Motion treats the allegations about Sergeant Speight's report as "a '*Franks*' based malicious prosecution claim." Mot. at 13. The Seventh Claim is a Fourteenth Amendment claim that a fabricated "no proof" narrative "was used to obtain the May 20, 2024 probable-cause determination and to support the continued legal-process restraints in 24CR184." Compl. ¶ 112B. "[T]he right not to be deprived of liberty as a result of the fabrication of evidence by a government officer" was clearly established long before 2024. *Truman v. Orem City*, 1 F.4th 1227, 1239–40 (10th Cir. 2021). A due-process claim based on false evidence is not confined to evidence offered at trial. *Klen v. City of Loveland*, 661 F.3d 498, 516 (10th Cir. 2011). And probable cause does not defeat it; the claim "requires a plaintiff to plausibly plead the presence of proximate cause, not the absence of probable cause." *Morphew v. Chaffee County*, 172 F.4th 802, 821 (10th Cir. 2026).

20. The Motion says the statements the Complaint alleges were omitted "were in fact present" in Sergeant Speight's report. Mot. at 13. The passage the Motion quotes states that "Max was asked if he had any proof of this and he did not," and then that Max said he had already emailed his evidence. Mot. at 12 (quoting Def.'s Ex. B at 3). The Complaint alleges what the report leaves out: Plaintiff's attempt to offer his own video, his request to see the complainants' video, and Deputy Miller's refusal. Compl. ¶ 37. Whether a report stating that Plaintiff "did not" have proof, while omitting that he offered it, is misleading is a question of fact that a Rule 12(b)(6) motion cannot resolve. *See Tal*, 453 F.3d at 1266.

21. The "conscience shocking" argument, Mot. at 13–14, does not defeat the fabrication claims. That standard measures "the substantive component of the Due Process Clause," *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998), where "explicit protection is not provided by another amendment," *Crowson v. Washington County*, 983 F.3d 1166, 1190 (10th Cir. 2020), and Plaintiff does not concede that it governs this claim. Where it applies, *Truman* held it met by

allegations that an executive official intentionally presented false information to secure a conviction: those allegations "paint a picture of arbitrary executive action that shocks the conscience." 1 F.4th at 1239. It described such conduct as "obviously egregious." *Id.* at 1240 (quoting *Pierce*, 359 F.3d at 1298). The Complaint alleges that Defendants knowingly fabricated the "no proof" narrative used to obtain the probable-cause determination. Compl. ¶¶ 112B, 118A. Defendants themselves contend that the state and federal standards are the same, Mot. at 5; on that premise the Ninth Claim's due-process theory stands with the Seventh Claim, and under § 13-21-131(2)(b) qualified immunity is no defense to it.

**E. The Eighth Claim.**

22. The Eighth Claim pleads selective enforcement under the traditional framework of *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1166–68 (10th Cir. 2003), and, only in the alternative, a class-of-one theory. Compl. ¶¶ 108B, 127B. The Motion addresses only the alternative. Mot. at 13. Under *Marshall*, an arrest "based on probable cause does not resolve" such a claim. 345 F.3d at 1166. The Supreme Court has explained that "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment," *Whren v. United States*, 517 U.S. 806, 813 (1996), and, as *Marshall* put it, "the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." *Marshall*, 345 F.3d at 1166; *see Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015) (noting that most of the plaintiff's claims "(except his equal protection claim)" required a probable-cause analysis). As to the alternative, the Motion's only distinction is that Plaintiff "admitted to brandishing a simulated weapon in order to scare his neighbors." Mot. at 13. "The act of 'brandishing' requires more than mere possession," *Chimera v. Lockhart*, 511 F. App'x 785, 792 (10th Cir. 2013) (unpublished), and on a motion to dismiss a court will not "accept as true facts that are not in the complaint, i.e., that [the plaintiff] was brandishing a gun at officers." *Hanson*, 2021 WL 2550162, at *5. The Complaint pleads the opposite, Compl. ¶¶ 24B, 24C, 39C, and pleads that Plaintiff and Boughton were accused of the

same offense in the same incident, each with video available. *Id.* ¶¶ 25F, 39B. Whether they were similarly situated cannot be resolved on the Motion's characterization of the pleading.

## IV. QUALIFIED IMMUNITY

23. Each right asserted was clearly established by May 19, 2024: freedom from warrantless arrest without probable cause, *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc); freedom from arrest and process obtained through affidavits that knowingly or recklessly misstate or omit facts material to probable cause, *Stewart*, 915 F.2d at 582–83; *Pierce*, 359 F.3d at 1298; freedom from deprivation of liberty by fabricated evidence, *Truman*, 1 F.4th at 1239–40; freedom from arrest without probable cause in retaliation for protected speech, *see Nieves*, 587 U.S. at 402; *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005) ("It has long been clearly established that the First Amendment bars retaliation for protected speech and association."); *Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1091 (D. Colo. 2023) (clearly established by June 2019, "including arrests without probable cause"), including the reporting of crimes to law enforcement, *Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty.*, 482 F.3d 1232, 1243 (10th Cir. 2007); and the duty to intervene in those violations, which *Bledsoe* recognized in 2022, 53 F.4th at 617. Where deliberate misstatements are alleged, the principle that "lying in a warrant affidavit is unconstitutional" "suffices to place the question beyond constitutional debate and put reasonable law enforcement officers on notice, even in the absence of factually analogous precedent." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020).

24. Arguable probable cause does not change the result. The Motion rests it on the same reading of the pleading. Mot. at 14. On the facts pleaded — an unaimed BB gun held down and away, a complainant who twice said she did not know whether anything was pointed at her, a video showing a "dark object" through a doorway, a negative pat-down, and exculpatory video the officers declined to examine — no reasonable officer could find a fair probability of felony

menacing. Compl. ¶¶ 60, 60A. A warrant does not protect an officer who "misrepresent[s] or omit[s] material facts to the magistrate judge." *Stonecipher*, 759 F.3d at 1142. And the Motion's arguable-probable-cause argument, Mot. at 14, does not reach claims for which probable cause is not an element. For selective enforcement, "lack of probable cause to arrest is not an element," and "arguable probable cause does not establish qualified immunity on an equal protection claim alleging a racially motivated arrest." *Detreville v. Gurevich*, No. 24-1427, 2025 WL 1874587, at *9 (10th Cir. July 8, 2025) (unpublished). The fabrication claim likewise turns on proximate cause, not probable cause. *Morphew*, 172 F.4th at 821.

## V. RULE 8

25. Rule 8 exists to give fair notice. The Motion shows that the Complaint gives it: Defendants addressed the claims by number and by theory and cited specific paragraphs of the Complaint throughout. *See generally* Mot. The Complaint's length reflects nine claims against three officers under federal and state law, pleaded with the particularity that pleading-stage qualified-immunity review requires. Compl. ¶ 4C. And before dismissing with prejudice for failure to comply with Rule 8, a court should consider the factors in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 (10th Cir. 2007). "Particularly in cases in which a party appears pro se, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the courts because of a technical violation." *Ehrenhaus*, 965 F.2d at 920 n.3.

## VI. NO DISMISSAL SHOULD BE WITH PREJUDICE

26. The Motion asks for dismissal "with prejudice" without addressing amendment. Mot. at 15. "[D]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (brackets

and internal quotation marks omitted) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)). Each deficiency the Motion asserts — length, the scope of the allegations against an individual defendant, the characterization of particular facts — could be addressed by amendment. Should the Court find any claim insufficient, Plaintiff respectfully requests that its dismissal be without prejudice.

**CONCLUSION**

27. For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss, ECF No. 28, and, in the alternative, that any dismissal be without prejudice.

Respectfully submitted this 7th day of October, 2026.

/s/ Maxfield Alton Sussman
Maxfield Alton Sussman
Plaintiff, Pro Se
[Restricted Address on File with Court]
Telephone: 706-897-5899
Email: maxs1983184@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October, 2026, I electronically filed the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (ECF NO. 28) with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Maxfield Alton Sussman
Maxfield Alton Sussman